UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

Docket No.: CV 11-05780 (JBW) (RLM)

LIBERTY MUTUAL INSURANCE COMPANY,
et al.

                              Plaintiffs,        **ORAL ARGUMENT REQUESTED**

          -against-

EXCEL IMAGING, P.C., et al.,

                              Defendants.

-----------------------------------------------------------------X

### PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' CONVERTED MOTIONS FOR SUMMARY JUDGMENT

Respectfully Submitted,

RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000

*Counsel for Plaintiffs, Liberty Mutual Insurance
Company, Liberty Mutual Fire Insurance Company,
Liberty Insurance Corporation, The First Liberty
Insurance Corporation, LM Insurance Corporation,
Liberty Mutual Mid-Atlantic Insurance Company,
Liberty County Mutual Insurance Company, and
LM Property and Casualty Insurance Company*

Of Counsel:

Barry I. Levy (BL 2190)
Michael A. Sirignano (MS 5263)
Glenn H. Egor (GE 3102)
Frank P. Tiscione (FT 5396)

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES................................................................................................

PRELIMINARY STATEMENT ....................................................................................1

SUPPLEMENTAL STATEMENT OF FACTS............................................................3

    A.   Facts Relating to Defendants' Statute of Limitations Argument ....................................3

    B.   Facts Relating to Plaintiffs' Arbitration Argument........................................................6

ARGUMENT...................................................................................................................7

  I.     THE STANDARD ON THIS MOTION ...........................................................7

  II.    DEFENDANTS' STATUTE OF LIMITATIONS ARGUMENTS FAIL .........8

    A.   Liberty Mutual Did Not Discover the Fraud Until Shortly Before Filing

        The Complaint ...........................................................................................................9

    B.   Defendants' Concealed Their Fraud For Years...........................................................10

  III.   THE DEFENDANTS' ARBITRATIONS ARGUMENT FAILS..................14

    A.   Defendants' Waived Arbitration By Commencing Suits on The Same Claims............14

    B.   Compelling Arbitration In This Case Would Frustrate Judicial Economy

    C.   And Lead To Inconsistent Results..............................................................................15

CONCLUSION ............................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Allstate Ins. Co. v. Lyons,
  2012 U.S. Dist. LEXIS 19866 (E.D.N.Y. February 16, 2012) ....................................................14

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)...........................................................7

Basile v. I.C. Systems,
  2011 U.S. Dist. LEXIS 105932 (W.D.N.Y. 2011)...................................................................13

BellSouth Telecomms., Inc. v. W.R. Grace & Co.,
  77 F.3d 603 (2d Cir. 1996) ......................................................................................................13

Celotex Corp. v. Catrett,
  477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).......................................................7, 8

Gallo v. Prudential Residential Services, L.P.,
  22 F.3d 1219 (2d Cir. 1994) .......................................................................................................7

Government Employees Insurance Co., et al. v. Excel Imaging, P.C., et al.,
  CV 12-00723 (JBW) (RLM) ....................................................................................................16

Goenaga v. March of Dimes Birth Defects Foundation,
  51 F.3d 14 (2d Cir. 1995) ...........................................................................................................8

Inst. for Shipboard Educ. v. Cigna Worldwide Inc. Co.,
  22 F.3d 414 (2d Cir. 1994) ......................................................................................................7, 8

Klein v. Auchincloss, Parker & Redpath,
  436 F.2d 339 (2d Cir. 1971) .....................................................................................................13

Nora Beverages, Inc. v. Perrier Group of America, Inc.,
  164 F.3d 736 (2d Cir. 1998) .......................................................................................................8

Tufariello v. Long Island R.R. Co.,
  458 F.3d 80 (2d Cir. 2006) .........................................................................................................8

Twin Labs, Inc. v. Weider Health & Fitness,
  900 F.2d 566 (2d Cir. 1990) .......................................................................................................8

**STATUTES**

N.Y. C.P.L.R. § 214(2).....................................................................................................................8

ii

N.Y. Ins. Law § 5106(b) ........................................................................................................ 14, 15

**OTHER**

10A Charles Alan Wright et al.
*Federal Practice and Procedure* § 2734 (2d ed 1983) ............................................................. 13

## PRELIMINARY STATEMENT

Plaintiffs, Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation, The First Liberty Insurance Corporation, LM Insurance Corporation, Liberty Mutual Mid-Atlantic Insurance Company, Liberty County Mutual Insurance Company, and LM Property and Casualty Insurance Company (collectively "Liberty Mutual" or "Plaintiffs"), respectfully submit this Supplemental Memorandum of Law in further opposition to the motions to dismiss by all defendants, Excel Imaging, P.C., Mark D. Freilich, M.D., Faisal Abdus Sami, M.D., Tariq R. Khan, M.D., Pervez Iqbal Qureshi, M.D., a/k/a Pervaiz Qureshi, M.D., Naiyer Imam, M.D., Afzal M. Amanat, Mohammed Shafkat Ilahi, Claimnet L.L.C., and Amaar Holding, Inc. (collectively "Defendants"), which motions were converted to summary judgment motions by the Court.

In accordance with the Court's Order limiting the issues to be addressed on Defendants' summary judgment motions, Liberty Mutual submits this Supplemental Memorandums of Law limited to two issues: (1) whether Liberty Mutual's claims are barred by the statute of limitations and (2) whether Liberty Mutual is required to attempt arbitration before the instant action may proceed. (See Docket Entry No. 49.) Liberty Mutual, nevertheless, incorporates into this supplemental opposition the arguments set forth in Liberty Mutual's two prior Memorandum of Law ("Liberty Mutual's Initial Opposition Memoranda") submitted in opposition to Defendants' separate motions to dismiss, as if fully set forth herein at length. (See Docket Entries Nos. 30 and 32.)

For the reasons set forth in this Supplemental Memorandum of Law, the accompanying affidavits, and Liberty Mutual's Initial Opposition Memoranda, Defendants' motions for summary judgment are wholly devoid of merit and must fail. At minimum, there are genuine issues of material fact that preclude summary judgment in favor of Defendants.

First, Liberty Mutual demonstrates herein that this action was timely interposed, well within any potentially applicable statute of limitations. Indeed, the evidence is clear that (i) Liberty Mutual did not discover that Excel Imaging, PC ("Excel") was fraudulently incorporated and illegally owned and controlled by non-physicians, and improperly utilizing independent contractors, until shortly before Liberty Mutual filed the Complaint in this matter; (ii) Liberty Mutual discovered Defendants' fraudulent scheme after it commenced an investigation of Excel in March 2011; and (iii) Defendants' entire scheme has been premised on concealing their illegal activities from New York automobile insurers. While it turns out that Defendants' scheme has been ongoing for years, Liberty Mutual was deceived and induced – like every other New York automobile insurer – until Liberty Mutual's Special Investigation Unit began uncovering and piecing together facts during an investigation of Excel that began in March 2011.

Second, Liberty Mutual demonstrates herein that there is no basis to suggest that it is required to arbitrate all of its claims before the instant action may proceed. The law is clear that insurers, such as Liberty Mutual, have an absolute right to bring affirmative litigation to recover payments already made to medical providers. Moreover, even if Defendants had a right to compel arbitration as to some of the claims, Defendants waived any such right. In fact, the evidence is clear that Excel has filed a total of 542 lawsuits in New York State courts against Liberty Mutual seeking recovery of No-Fault benefits; Excel has never filed a single arbitration proceeding; and Excel is currently litigating 120 separate lawsuits against Liberty Mutual in New York State courts. These suits seek to collect on the same pending bills that are the subject of Liberty Mutual's declaratory judgment claim in this federal court litigation.

Under the circumstances and facts presented, Defendants' motions for summary judgment are wholly devoid of merit. At minimum, Defendants' motions must be denied

2

because there are genuine issues of material fact that preclude summary judgment in Defendants' favor.

## SUPPLEMENTAL STATEMENT OF FACTS

Liberty Mutual set forth a lengthy statement of facts in its Initial Opposition Memoranda, which was derived from the Complaint in this action. To avoid repetition, Liberty Mutual hereby submits a supplemental statement of facts solely relating to the issues to be decided on Defendants' summary judgment motions, to wit; (1) whether the statute of limitations bars Liberty Mutual's action and (2) whether Liberty Mutual can be compelled to arbitrate this matter.

### A.    Facts Relating to Defendants' Statute of Limitations Argument

Liberty Mutual filed the Complaint in this action on November 23, 2011. As set forth in detail in the accompanying Affidavit of James Beadle (hereinafter, the "Beadle Aff."), Liberty Mutual did not discover that Excel was fraudulently incorporated and illegally owned and controlled by non-physicians, and improperly utilizing independent contractors, until shortly before the Complaint was filed in this matter. Beadle Aff. at ¶¶ 9, 15. In fact, Liberty Mutual's formal investigation of Excel did not begin until March 2011. Id. at ¶ 8. It was this investigation of Excel that led Liberty Mutual to file the within action against Excel and the other Defendants on November 23, 2011. Id. at ¶ 11.

Liberty Mutual's investigation of Excel in March 2011 was prompted by an investigation into an unrelated healthcare provider in 2010, wherein Liberty Mutual discovered that a reading radiologist (Dr. Mark Shapiro), who has been associated with more than a dozen suspect MRI clinics, also purported to serve as a reading radiologist at Excel. Id. at ¶ 4.

In July 2010, Liberty Mutual's investigator, James Beadle, conducted a limited background review of Excel as part of his review of numerous other healthcare providers

3

associated with Dr. Mark Shapiro. Id. at ¶ 5.  During this limited review, Liberty Mutual's investigator learned that Dr. Shapiro purported to begin reading MRI studies for Excel in March 2010. Id. Liberty Mutual's investigator further learned that Kings Highway Diagnostic Imaging, P.C. d/b/a Ultra Diagnostic Imaging ("Kings Highway/Ultra Diagnostic"), had operated in the past at the same location as Excel; that the alleged owner of Kings Highway/Ultra Diagnostic, Dr. Ravindra Ginde, had surrendered his medical license and did not contest a charge of negligence; and that certain non-physician management personnel were associated with the Excel MRI practice. Id.

During the investigation of the other, unrelated healthcare provider in 2010, Liberty Mutual's investigator made various attempts to locate and talk with Dr. Mark Shapiro. Id. at ¶ 6. On or about July 21, 2010, Mr. Beadle visited Excel on Nostrand Boulevard in Brooklyn in an attempt to locate Dr. Shapiro.  Id. However, Mr. Beadle was refused an inspection of Excel's facility by the front desk staffer, who also refused to answer any of his questions and told him that they would not provide any information.  Id.

In August 2010, Liberty Mutual's investigator noted Excel as a possible candidate for investigation by Liberty Mutual, but did nothing further relating to Excel at that time. Id. at ¶ 7. Thereafter, in March 2011, Liberty Mutual opened an investigation of Excel, which included an investigation of whether Excel was "fraudulently incorporated" and owned and controlled by non-physicians.  Id. at ¶ 8.

It was not until Mr. Beadle commenced an investigation of Excel in March 2011 that Liberty Mutual began to discover, for the first time, considerable new information regarding Excel's history, its operations, management, and purported owners, all showing, among other things, that (i) Excel has been nominally owned on paper by a "revolving door" of physicians

4

who have never truly owned or controlled the practice and who have not actually practiced medicine through the professional corporation and (ii) Excel has been fraudulently incorporated, owned and controlled by non-physicians, Afzal Amanat and Mohammed Ilahi. Id. at ¶ 9.

As a result of the investigation begun in March 2011, Liberty Mutual's investigator was able to piece together the suspect history of Excel and its record owners, including obtaining information regarding Excel's first nominal owner, Dr. Freilich. Id. at ¶ 10. In fact, a few months after commencing the formal investigation of Excel in March 2011, Mr. Beadle obtained the transcript from a 2003 examination under oath ("EUO") of Dr. Freilich that was conducted by another insurance company, wherein Dr. Freilich stated, among other things, that he was "not in charge of anything" at Excel; he was "not really doing much" at Excel; and he considered himself to be an independent contractor despite the fact that his name was listed as the sole owner of Excel. Id.

While Liberty Mutual developed sufficient information to file the Complaint in this action in November 2011, the discovery of Defendants' fraudulent scheme took substantial effort as the Defendants' entire scheme has been premised for years on concealing their illegal activities from New York automobile insurers. Id. at ¶ 13.

For example, Excel has continuously submitted facially valid bills and medical reports to Liberty Mutual in support of Excel's requests for reimbursement under the No-Fault Law, while the layperson-defendants (Amanat and Ilahi) illegally controlling Excel, (i) represented to the outside world that they were mere "administrators" or "managers" operating Excel under the authority of the doctors who were listed as the record owners of Excel; (ii) repeatedly transferred the nominal ownership of the professional corporation when any issue arose regarding a particular nominal owner, so as to avoid scrutiny from insurers; and (iii) obtained and used

signature stamps of the doctors who were listed as record owners of Excel so that they could conduct their illegal operation and control of Excel in secret. Id.

Furthermore, the Defendants and people working on their behalf refused to allow Liberty Mutual's investigator to conduct an inspection of Excel's facility and refused to provide information about the MRI practice when inquiries were made. Id. Thereafter, after Liberty Mutual became aware of concerns regarding the possible illegal ownership and control of Excel, neither the listed record owner of Excel nor anyone else on Excel's behalf appeared for an "examination under oath" duly requested by Liberty Mutual under New York's No-Fault Law. Id.

Finally, *to this very day*, Defendants continue to try to conceal their fraud by hiring attorneys who file collection lawsuits on behalf of Excel in state court, wherein representations are made to all parties and the judiciary that (i) Excel is duly "authorized to provide Health Services in the State of New York"; (ii) Excel duly submitted bills for payment of No-Fault benefits to the insurer along with "proper No Fault Verification Forms," and (ii) Excel duly "hired attorneys Israel, Israel & Purdy, LLP to collect the….overdue No-Fault benefits" on behalf of Excel. Id.

### B. Facts Relating to Plaintiffs' Arbitration Argument

Liberty Mutual's Complaint contains five claims for relief. The first claim seeks declaratory relief, pursuant to the Declaratory Judgment Act, declaring that Excel has no right to receive payment for any pending bills submitted to Liberty Mutual. The second, third, fourth, and fifth claims for relief seek damages, recovery of monies paid to Excel, and/or recovery from Defendants in the amount they have been unjustly enriched, pursuant to claims based on RICO, fraud, and unjust enrichment.

6

As more fully set forth in the accompanying Affidavit of Thomas Brosnan (hereinafter, the "Brosnan Aff."), Excel has filed a total of 542 lawsuits in New York State courts against Liberty Mutual seeking recovery of No-Fault benefits. Brosnan Aff. at ¶ 4. Of this total, Excel is currently litigating 120 suits against Liberty Mutual, demanding a total of $220,760.00 relating to allegedly unpaid, pending claims. Id. These suits seek to collect on the same pending bills that are the subject of Liberty Mutual's declaratory judgment claim in this federal court litigation. Id.

Furthermore, Excel has continued to file new lawsuits seeking collection of allegedly unpaid, pending claims from Liberty Mutual in New York State courts, even after Liberty Mutual commenced the within action against Defendants. Brosnan Aff. at ¶ 6. Excel has never filed an arbitration claim for No-Fault benefits against Liberty Mutual, instead always choosing, and continuing to choose, to seek recovery of No-Fault benefits from Liberty Mutual through litigation. Id. at ¶ 5. Defendants' actions amount to a waiver of any arbitration right, to the extent one even exists (which Liberty Mutual denies).

## ARGUMENT

### I.    THE STANDARD ON THIS MOTION

Summary judgment will be granted if no genuine issue of material fact remains to be decided and the undisputed facts warrant judgment for the moving party as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Inst. for Shipboard Educ. v. Cigna Worldwide Inc. Co., 22 F.3d 414, 418 (2d Cir. 1994). If a reasonable jury could return a verdict in favor of the non-moving party, a material issue of fact remains in contention and the motion for summary judgment must be denied. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Gallo v. Prudential Residential Services, L.P., 22 F.3d 1219, 1223-24 (2d Cir. 1994). Any ambiguities and all inferences must be drawn in favor of the non-movant, and the court must view the

7

evidence in the light most favorable to the non-movant. See Tufariello v. Long Island R.R. Co., 458 F.3d 80, 85 (2d Cir. 2006); Inst. for Shipboard Educ., 22 F.3d at 418; Twin Labs, Inc. v. Weider Health & Fitness, 900 F.2d 566, 568 (2d Cir. 1990).

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of a material fact. Celotex Corp., 477 U.S. at 322-23; Nora Beverages, Inc. v. Perrier Group of America, Inc., 164 F.3d 736, 742 (2d Cir. 1998); Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995).

## II.    DEFENDANTS' STATUTE OF LIMITATIONS ARGUMENTS FAIL

Defendants' motions to dismiss on statute of limitations grounds, now converted to summary judgment motions on this issue, are devoid of all merit and must be denied.[1]   As discussed at length in Liberty Mutual's Memorandum of Law In Opposition To Defendant Freilich's Motion to Dismiss ("Initial Opp to Defendant Freilich"), the statute of limitations for a civil RICO is four years from discovery; six years for fraud (or two years from discovery); and six years for unjust enrichment.[2]   (See Initial Opp to Defendant Freilich at pp. 10-19). The facts and law establish that Liberty Mutual's action is timely or, at minimum, that there are genuine issues of fact warranting a trial.

---

[1] Freilich moved to dismiss all of Liberty Mutual's claims on statute of limitations grounds, while the remaining Defendants moved to dismiss only Liberty Mutual's RICO claims on statute of limitations grounds.

[2] Freilich advances convoluted arguments to the effect that the three-year statute of limitations set forth in N.Y. C.P.L.R. § 214(2) applies to Liberty Mutual's fraud and unjust enrichment claims. His arguments are devoid of merit for the reasons set forth in Liberty Mutual's Initial Opposition Memoranda. In any event, even if the shorter limitations period were to apply, Liberty Mutual's action is still timely based on the facts and law.

A.    **Liberty Mutual Did Not Discover the Fraud Until Shortly Before Filing The Complaint**

The evidence demonstrates that all of Liberty Mutual's claims have been timely interposed -- well within any potentially applicable statute of limitation -- as Liberty Mutual did not discover that Excel was fraudulently incorporated and illegally owned and controlled by non-physicians, and improperly utilizing independent contractors, until shortly before Liberty Mutual filed the Complaint in this matter on November 23, 2011.

Liberty Mutual discovered Defendants' fraudulent scheme only after it commenced an investigation of Excel in March 2011. Beadle Aff. at ¶¶ 3, 8-9. It was only at this time that Liberty Mutual began to discover the information regarding Excel's history, its operations, management, and purported owners, which showed, among other things, that (i) Excel has been nominally owned on paper by a "revolving door" of physicians who have never truly owned or controlled the practice and who have not actually practiced medicine through the professional corporation and (ii) Excel has been fraudulently incorporated, owned and controlled by non-physicians Afzal Amanat and Mohammed Ilahi. Id. at ¶ 9.[3]

Liberty Mutual's investigation of Excel, which was commenced in March 2011, led to the filing of the within affirmative fraud recovery litigation against Excel and the other Defendants in November 2011. Id. at ¶ 11. No other insurance company has filed an affirmative fraud recovery action against Excel prior to the time that Liberty Mutual commenced this action in November 2011. Id. at ¶ 12.

Finally, neither Defendant Freilich nor the other Defendants have presented *any* evidence that Liberty Mutual knew that Excel was fraudulently incorporated and illegally owned and

---

[3] In fact, Liberty Mutual's investigator, Mr. Beadle did not obtain the transcript from a 2003 examination under oath ("EUO") of Dr. Freilich that was conducted by another insurance company until after he commenced his investigation in March 2011. Beadle Aff. at ¶ 10.

9

controlled by non-physicians, and improperly utilizing independent contractors, until shortly before Liberty Mutual filed the Complaint in this matter.

**B.    Defendants' Concealed Their Fraud For Years**

Defendant Freilich, having no evidence of actual notice by Liberty Mutual, vaguely asserts that Liberty Mutual was on inquiry notice of Defendants' fraud at various points since 2003. Defendants' assertion, however, in no way supports summary judgment in Defendants' favor because (i) the evidence demonstrates that Defendants' entire scheme has been premised for years on concealing their illegal activities from New York automobile insurers and (ii) the items pointed out by Freilich do not involve fraudulent incorporation, fee-splitting, or independent contractor billing – which constitute the gravamen of the present action.

Although it has turned out that Defendants' scheme has been ongoing for years, Liberty Mutual was deceived and induced – like every other New York automobile insurer – until Liberty Mutual's Special Investigation Unit began uncovering and piecing together facts during an investigation of Excel that began in March 2011. In fact, the discovery of the Defendants' fraudulent scheme took substantial effort due to Defendants' deception and concealment. For example:

- Excel has continuously submitted facially valid bills and medical reports to Liberty Mutual in support of Excel's requests for reimbursement under the No-Fault Law;

- the layperson-defendants illegally controlling Excel (Amanat and Ilahi) represented to the outside world that they were mere "administrators" or "managers" operating Excel under the authority of the doctors who were listed as the record owners of Excel;

- the layperson-defendants repeatedly transferred the nominal ownership of the professional corporation when any issue arose regarding a particular nominal owner, so as to avoid scrutiny from insurers.

- the layperson-defendants obtained and used signature stamps of the doctors who were listed as record owners of Excel so that they could conduct their illegal operation and control of Excel in secret;

- the nominal owners and "reading radiologists" working for Excel were identified as the provider of services on facially valid assignments of benefits, MRI interpretive reports, and bills submitted to Liberty Mutual even though it has recently been learned that they were in fact paid as independent contractors and had no actual employment relationship with Excel; and

- the Defendants and people working on their behalf refused to allow Liberty Mutual to conduct an inspection of Excel's facility and refused to provide information about the MRI practice when inquiries were made.

Beadle Aff. at ¶ 13.

Plainly, based upon Liberty Mutual's records, the timing of the investigation of Excel, the nature of the Defendants' fraud, and the Defendants' efforts to conceal their fraud, Liberty Mutual did not discover that Excel was fraudulently incorporated and illegally owned and controlled by non-physicians, and improperly utilizing independent contractors, until shortly before it filed the Complaint in this matter –and it is not reasonable to suggest that Liberty Mutual *should have* discovered the fraudulent scheme earlier.

Freilich's assertions that Liberty Mutual was on inquiry notice of Defendants' fraud at various points since 2003 in no way support a grant of summary judgment in Freilich's favor.

For example, Liberty Mutual has established that it did not obtain a copy of the December 2003 examination under oath of Freilich conducted by another insurance company until after it began its investigation of Excel in 2011. Beadle Aff. at ¶ 10. Freilich has provided no evidence to the contrary – and no proof that somehow the entire New York automobile industry should have been on inquiry notice in 2003 that Excel was fraudulently incorporated, illegally owned and controlled by non-physicians, and improperly utilizing independent contractors.

Freilich's other assertions, relating to the existence of disciplinary proceeding records in 2006 or 2007 and the existence of an affirmative defense in a 2004 civil court Answer filed by Liberty Mutual against Excel, do not support summary judgment in Freilich's favor. Even a cursory reading of the papers relating to the disciplinary proceeding records and the affirmative defense in the civil court Answer reveal that they do not involve fraudulent incorporation, fee-splitting, or independent contractor billing. Indeed, the only evidence presented is that Liberty Mutual did not develop evidence of this sort until it began an investigation of Excel in 2011.

Tellingly, Defendants and people working on their behalf refused to allow Liberty Mutual's investigator to conduct an inspection of Excel's facility and refused to provide information about the MRI practice when inquiries were made. Beadle Aff. at ¶ 13. Thereafter, even after Liberty Mutual became aware of concerns regarding the possible illegal ownership and control of Excel, neither the listed record owner of Excel nor anyone else on Excel's behalf appeared for an "examination under oath" duly requested by Liberty pursuant to New York's No-Fault regulations. Id.

Moreover, while Freilich's counsel in this proceeding essentially acknowledges Freilich's role in the fraudulent scheme, the other Defendants dispute any wrongdoing. Indeed, these Defendants, *to this very day*, continue to try to conceal their fraud by hiring attorneys who file

12

collection lawsuits on behalf of Excel in state court, wherein representations are made to all parties and the New York State judiciary that (i) Excel is duly "authorized to provide Health Services in the State of New York"; (ii) Excel duly submitted bills for payment of No-Fault benefits to the insurer along with "proper No Fault Verification Forms," and (iii) Excel duly "hired attorneys Israel, Israel & Purdy, LLP to collect the....overdue No-Fault benefits" on behalf of Excel. Beadle Aff. at ¶ 13.

Based on the law and the facts presented, it is not reasonable for Freilich to suggest that Liberty Mutual knew or should have known that Excel was fraudulently incorporated, illegally owned and controlled by non-physicians, and improperly utilizing independent contractors, years before Excel filed its complaint in November 2011. At minimum, there are issues of fact regarding the statute of limitations that preclude any grant of summary judgment in Defendants' favor. See BellSouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 609 (2d Cir. 1996) (a court "will refuse to grant summary judgment for the defendant if there is an issue of fact as to when the [statute] of limitations period began") (citing [10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2734, (2d ed. 1983)]; see also Klein v. Auchincloss, Parker & Redpath, 436 F.2d 339, 341-42 (2d Cir. 1971) (reversing and remanding grant of summary judgment to defendant because triable issues of fact existed as to when Plaintiff's claim accrued); Basile v. I.C. Systems, 2011 U.S. Dist. LEXIS 105932 (W.D.N.Y. 2011) (finding genuine issues of material fact as to whether certain acts occurred within the statute of limitations and therefore denying defendants motion for summary judgment).

Accordingly, Freilich's motion for summary judgment on the grounds of statute of limitations should be denied, while the other Defendants' perfunctory motion concerning the RICO statute of limitations should similarly be denied.

III.    THE DEFENDANTS' ARBITRATIONS ARGUMENT FAILS

Defendants argue that the Court should compel arbitration pursuant to the Federal Arbitration Act and, by extension, dismiss this action because N.Y. Ins. Law § 5106(b) supposedly mandates arbitration of the issues in this action. See Defendant's Memorandum of Law in support at pp. 6-14.[4]

As set forth in Liberty Mutual's Memorandum of Law in Opposition to the Motion To Compel Arbitration and Dismiss by Defendant Excel Imaging PC, et al., ("Initial Opp To Excel/Defendants' Motion"), Liberty Mutual's affirmative claims to recover No-Fault Benefits that Liberty Mutual already has paid, in reliance on the Defendants' fraudulent incorporation, are not subject to arbitration. (See Initial Opp To Excel/Defendants' Motion at pp. 11-25.)  Liberty Mutual's rights and obligation to proceed in this forum has been recognized by the New York State Insurance Department, Federal and New York State Courts. Id.

A.    Defendants' Waived Arbitration By Commencing Suits on The Same Claims

The absolute right of insurers, like Liberty Mutual, to bring affirmative litigation to recover payments already made to medical providers has recently been reconfirmed by the Honorable Judge Gleeson in Allstate Ins. Co. v. Lyons, 2012 U.S. Dist. LEXIS 19866 (E.D.N.Y. February 16, 2012), where it was held that the arbitration provision in N.Y. Insurance Law Section 5106(b) is inapplicable to litigation brought by insurers to recover No-Fault benefits paid as the result of a healthcare provider's fraudulent conduct.

Liberty Mutual acknowledges that Judge Gleeson did compel arbitration as to a limited category of *unpaid, pending claims*. However, Liberty Mutual contends that that portion of the Lyons' decision was incorrectly decided.  In any event, it is irrelevant in the present case because Defendants here already have commenced litigation on their unpaid, pending claims.  In fact, Excel has filed a total of 542 lawsuits in New York State courts against Liberty Mutual seeking recovery of No-

---

[4] Freilich also adopts this argument in his moving papers.

Fault benefits.  Brosnan Aff. at ¶ 4.  Excel is currently litigating 120 suits against Liberty Mutual, demanding a total of $220,760.00 relating to allegedly unpaid, pending claims.  Id. These suits seek to collect on the same pending bills that are the subject of Liberty Mutual's declaratory judgment claim in this federal court litigation.  Id.

Furthermore, Excel has continued to file new lawsuits seeking collection of allegedly unpaid, pending claims from Liberty Mutual in New York State courts, even after Liberty Mutual commenced the within action against Defendants.  Id. at ¶ 6.

Excel has never filed an arbitration claim for No-Fault benefits against Liberty Mutual, instead always choosing, and continuing to choose, to seek recovery of No-Fault benefits from Liberty Mutual through litigation. Id. at ¶ 5.

As discussed in the cases set forth in Liberty Mutual's Initial Opp To Excel/Defendants' Motion, once a party seeking reimbursement of No-Fault benefits elects to proceed with either arbitration or litigation, it cannot then seek redress of any subsequent issues regarding such benefits in a different forum. Id. at pp. 20-22.  Thus, even if a portion of Liberty Mutual's claims were subject to arbitration under Section 5106(b), Defendants have waived their right to arbitrate these claims.

**B.**     **Compelling Arbitration In This Case Would Frustrate Judicial Economy and Lead to Inconsistent Results**

Defendants cannot colorably contend that Liberty Mutual's civil RICO, fraud, or unjust enrichment claims are subject to arbitration, and there can be no real doubt that Liberty Mutual is entitled – at a minimum – to proceed on those claims in this forum. Were the Court to dismiss Liberty Mutual's declaratory judgment claim in favor of arbitration, while retaining jurisdiction over Liberty Mutual's RICO, fraud, and unjust enrichment claims, it would frustrate the interests of judicial economy and lead to inconsistent results.  For instance, Liberty Mutual could proceed in this action on its RICO, fraud, and unjust enrichment claims, to the effect that the Defendants have engaged in a

15

large-scale fraudulent scheme. Meanwhile, Liberty Mutual could be forced to defend hundreds of individual collections arbitrations -- arising out of the same core facts as its RICO, fraud, and unjust enrichment claims – that could be disposed of with far greater efficiency in the context of the present declaratory judgment claim.

Moreover, even if this Court compelled arbitration of Liberty Mutual's declaratory judgment claim, the Court will still have to address a virtually identical declaratory judgment claim in the recent case filed by GEICO against the same defendants. See Government Employees Insurance Co., et al. v. Excel Imaging, P.C., et al., CV 12-00723 (JBW) (RLM). In that case, which has been recently transferred to this Court, GEICO has made virtually identical allegations as to Excel's fraudulent incorporation, fee splitting and utilization of independent contractors, among other things. (See Docket No. 1). Neither Excel nor any of the defendants in that case moved to compel arbitration. Defendant Freilich moved to dismiss solely on statute of limitations grounds and all of the remaining Defendants served an Answer. (See Docket No. 49). It would be a tremendous waste of the parties' and Court's time and resources  -- and lead to absurd results – if Excel could force Liberty Mutual to arbitrate its declaratory judgment claim, while Excel was voluntarily litigating the exact same claim with GEICO in this very Court.

In sum, Defendants plainly have waived any arbitration rights they may have (though Liberty Mutual denies any such rights exist). It also would be illogical and inefficient for this Court to compel arbitration in this matter when the Court will nevertheless be litigating the very same issues, involving the very same defendants, in this Court. In short, Defendants' motion for summary judgment on their request to compel arbitration in this action should be denied. At minimum, triable issues of fact exist that preclude summary judgment in Defendants' favor.

## CONCLUSION

For the reasons stated herein, Defendants' motions should be denied in their entirety.

Dated: May 21, 2012

Respectfully submitted,

RIVKIN RADLER LLP

By: _____/s/_____

Barry I. Levy (BL 2190)
Michael A. Sirignano (MS 5263)
Glenn H. Egor (GE 3102)
Frank P. Tiscione (FT 5396)
926 RXR Plaza
Uniondale, New York 11556-0926
(516) 357-3000

*Counsel for Plaintiffs, Liberty Mutual Insurance
Company, Liberty Mutual Fire Insurance Company,
Liberty Insurance Corporation, The First Liberty
Insurance Corporation, LM Insurance Corporation,
Liberty Mutual Mid-Atlantic Insurance Company,
Liberty County Mutual Insurance Company, and
LM Property and Casualty Insurance Company*

2614745 v2