UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LIBERTY MUTUAL INSURANCE COMPANY, LIBERTY
MUTUAL FIRE INSURANCE COMPANY, LIBERTY INSURANCE
CORPORATION, THE FIRST LIBERTY INSURANCE
CORPORATION, LM INSURANCE CORPORATION, LIBERTY
MUTUAL MID-ATLANTIC INSURANCE COMPANY, LIBERTY
COUNTY MUTUAL INSURANCE COMPANY, and LM
PROPERTY AND CASUALTY INSURANCE COMPANY,

                    Plaintiffs,

             - against –

EXCEL IMAGING, P.C.,

             - and -

MARK D. FREILICH, M.D., FAISAL ABDUS SAMI, M.D., TARIQ
RAFIQ KHAN, M.D., PERVEZ IQBAL QURESHI, a/k/a PERVAIZ
QURESHI, M.D., M.D., and NAIYER IMAM, M.D.

             - and -

AFZAL M. AMANAT, MOHAMMED SHAFKAT ILAHI,
CLAIMNET, L.L.C., AND AMAAR HOLDING, INC.,

                  Defendants

Case No.:
11-CV-5780
(JBW)(RLM)


## REPLY MEMORANDUM


**DAVIDOFF HUTCHER & CITRON LLP**
**f/k/a Davidoff Malito & Hutcher LLP**
*Attorneys for the "Non-Freilich" Defendants*


By:    Andrew Paul Cooper, Esq.
         Jonathan M. Cader, Esq.
         200 Garden City Plaza, Suite 315
         Garden City, New York 11530
         (516) 248-6400

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ...................................................................................................................... 1

    I.  STANDARD OF REVIEW ..................................................................................... 1

    II. PLAINTIFFS' RICO CLAIMS ARE TIME BARRED ........................................... 2

    III.    PLAINTIFFS' RICO CLAIMS FAIL AS A MATTER OF LAW ............................ 7

        A. Plaintiffs Do Not Allege a RICO Conspiracy ........................................... 8

        B. Plaintiffs Do Not Allege an Enterprise That is Distinct From
           The Pattern Of Racketeering Activity ...................................................... 11

        C. Plaintiffs Have Failed to Articulate a Claim for Mail Fraud ..................... 14

    CONCLUSION..................................................................................................... 16

## TABLE OF AUTHORITIES

### Cases

*Agency Holding Corp. v. Malley—Duff & Assocs.*, 483 U.S. 143 (1987). ...................................... 2

*Amsterdam Tobacco Inc. v. Philip Morris Inc.*, 107 F.Supp.2d 210, 215 (S.D.NY. 2000).......... 12

*Amsterdam Tobacco Inc., supra* .................................................................................................. 13

*Anderson News, L.L.C. v. Am. Media, Inc.*, 732 F.Supp.2d 389 (SDNY 2010) ............................ 4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-450, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)
................................................................................................................................................... 1

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................... 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................... 7

*Bennett v. United States Trust Co. of N.Y.*, 770 F.2d 308, 315 (2d Cir.1985) ............................ 12

*Bingham v. Zolt*, 66 F.3d 553 (2d Cir. 1995) .................................................................................. 3

*Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 113 F.Supp.2d 345, 366
    (E.D.N.Y.2000) ...................................................................................................................... 13

*Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) ............. 12

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ................. 1

*Celotex Corp. v. Catrett*, 477 U.S. at 324. ..................................................................................... 1

*Chappaqua Corp. v. Marine Midland Bank, N.A.*, and its progeny. See 30 F.3d 339, 343–44 (2d
    Cir.1994) ................................................................................................................................ 13

*Contemporary Mission Inc. v. U.S. Postal* Service, 648 F. 2d 97, 107 n. 14 (2d Cir. 1981).......... 2

*Crab House of Douglaston, Inc. v. Newsday, Inc.*, 418 F. Supp. 2d at 205...................... 11, 12, 13

*Crab House of Douglaston, Inc., supra* ........................................................................................... 8

*Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F.Supp.2d 153, 166.. 7

*De La Roche v. Calcagnini*, 1997 WL 292108 (S.D.N.Y. 1997) ..................................................... 7

*DeSilva v. North Shore-Long Island Jewish Heath System, Inc.*, 770 F.Supp.2d 497 (E.D.N.Y.
    2011) ........................................................................................................................................ 5

*Donahue v. Pendleton Woolen Mills, Inc.*, 633 F. Supp 1423, 1443 (S.D.N.Y. 1986) .................. 6

*Dweck Law Firm, L.L.P. v. Mann*, 340 F.Supp.2d 353 (SDNY 2004).......................................... 4

*Excel Imaging, P.C., Assignor of Robert Gaznell v. Liberty Mutual Insurance Compan* .............. 4

*Frankel v. Cole*, 313 Fed. Appx. 418 (2d Cir. 2009)................................................................... 2, 3

*Fresh Meadow Food Services, LLC v. RB 175 Corp*..................................................................... 15

*Gallo v. Prudential Residential Servs. Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir. 1994), *cert.
    den.* 481 U.S. 1029, 107 S. Ct. 1955, 95 L.Ed.2d 527 (1987) ................................................. 2

*Goren v. New Vision Int*, 156 F.3d 721, 731 (7th Cir. 1998)........................................................... 7

*Gregoris Motors v. Nissan Motor Corp.*, 630 F.Supp. 902, 913 (E.D.N.Y.1986) ...................... 11

*Harlan Assocs. v. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) ..................................... 2

*In Re Merrill Lynch Ltd. P 'Ships Litig.*, 154 F.3d 56, 59 (2d Cir. 1998) ..................................... 3

*In Re Merrill Lynch*, 154 F.3d at 59-60 ......................................................................................... 3

*Jones v. Nat'l Comm. & Surveillance Networks*, 2006 WL 73623, *9 (S.D.N.Y. 2006) ............. 11

*Koch v. Christie's Intl. PLC*, 785 F. Supp. 2d 105, 114 (S.D.N.Y. 2011) ..................................... 6

*Law Offices of Curtis v. Trinko v. Bell Atlantic Corp.*, 294 F.3d 307, 333 (2d Cir.2002)............. 8

*Lesavoy v. Lane*, 304 F.Supp.2d 520 (S.D.N.Y., 2004).................................................... 7, 11, 13

*Lucas-Plaza Hous. Dev. Corp. v. Corey*, 23 A.D.3d 217 (1st Dept. 2005)..................................... 6

*Matsushita Elec. Industries Co.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ..... 2

*McLaughlin v. Anderson*, 962 F.2d 187 (2d Cir. 1992)................................................................. 15

*Moss v. Morgan Stanley Inc.*, 719 F.2d 5 (2d Cir., 1983).............................................................. 7

*National Group for Communications and Computers Ltd. v. Lucent Technologies Inc.,* 420 F. Supp. 2d 253 (S.D.N.Y. 2006)................................................................................................ 3

*Neder v. United States,* 527 U.S. 1 (1999).................................................................................. 14

*Nichols v. Mahoney,* 608 F.Supp.2d 526, 536 (S.D.N.Y.2009)................................................ 8

*Patrick v. New York City Transit* Authority, 2007 WL 2071555 at *10 (E.D.N.Y. July 16, 2007)2

*Pharr v. Evergreen Gardens, Inc.,* 2004 WL 42262, at * 2 (S.D.N.Y. Jan. 7, 2004)..................... 3

*Porcelli v. U.S.,* 404 F.3d 157 (2d Cir. 2005)........................................................................... 14

*Rashed v. Astrue,* 2010 U.S. Dist. LEXIS 78148 (EDNY 2010)................................................ 4

*Redtail Leasing, Inc. v. Bellezza,* 1997 WL 603496, *5 (S.D.N.Y. 1997) ................................. 14

Reves v. Ernst & Young, 507 U.S. 170, 184 (1993)................................................................... 14

*Rotella v. Wood,* 528 U.S. 549 (2000)........................................................................................ 6

*Rotella v. Wood,* 528 U.S. 549, 552 (2000) ............................................................................... 2

*S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.,* 84 F.3d 629 (2d Cir. 1996) ................ 14

*Scheuer v. Rhodes,* 416 U.S. 319, 322 (1974) ........................................................................... 2

*Schmidt v. Fleet Bank,* 16 F.Supp.2d 340, 349 (S.D.N.Y.1998) .............................................. 13

*U.S. v. Autuori,* 212 F.3d 105, 115 (2d Cir. 2005).................................................................... 14

*U.S. v. Int'l Longshoremen's Ass'n.,* 518 F. Supp. 2d 422, 273 (E.D.N.Y. 2007) ...................... 11

*U.S. v. Ruggiero,* 726 F.2d 913, 921 (2d Cir. 1984).................................................................. 9

*U.S. v. Turkette,* 452 U.S. 576, 583 (1981) .............................................................................. 12

*United States v. D'Amato,* 39 F.3d 1249 (2d Cir.1994) ............................................................ 14

*United States v. Dinome,* 86 F.3d 277, 283 (2d Cir.1996).......................................................... 14

*United States v. Gelb,* 700 F.2d 875 (2d Cir.), *cert. denied,* 464 U.S. 853 (1983)...................... 14

*United States v. Gole,* 158 F.3d 166 (2d Cir.1998).................................................................... 14

*United States v. Riccobene,* 709 F.2d 214, 223-24 (3d Cir.1983) .............................................. 13

*United States v. Teitler,* 802 F.2d 606, 612–13 (2d Cir.1986)..................................................... 9

*v. Giacobbe,* 944 F.Supp 147, 153 (E.D.N.Y. 1996) ................................................................ 15

*Volmar Distributors, Inc. v. New York Post Co., Inc.* 825 F.Supp. 1153, 1167 (S.D.N.Y. 1993) . 9

*Watts v. Exxon Corp.,* 188 A.D.2d 74, 76 (3d Dept. 1993); .................................................... 6

*World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.,* 328 Fed.Appx. 695, 697 (2d Cir. 2009) .......................................................................................................................... 3, 5

*Zaro Licensing, Inc. v. Cinmar, Inc.,* 779 F.Supp. 276, 284 (S.D.N.Y.,1991) ............................ 11

## Statutes

18 U.S.C. § 1341 ....................................................................................................................... 8

18 USC §1962(d) ...................................................................................................................... 11

## Other Authorities

Fed. Jury Prac.& Instr. §161.23 ................................................................................................ 7

5A Charles Alan Wright & Arthur R. Miller,
    *Federal Practice and Procedure § 1357* (2d ed.1990) .......................................................... 8

## Rules

Fed.R.Civ.P. 9(b) .......................................................................................................... 15

Fed. R.Civ.P. 56(c) ........................................................................................................ 1

## PRELIMINARY STATEMENT

Defendants Excel Imaging, P.C. ("*Excel*"), Faisal Abdus Sami, M.D., Tariq R. Kahn, M.D., Perez Iqbal Qureshi, M.D., a/k/a Pervaiz Qureshi, M.D., Naiyer Imam, M.D. (for convenience only, referred to in the Complaint as the "*Nominal Owner Defendants*"), Afzal M. Amanat, Mohammed Shafkat Ilahi, Claimnet, L.L.C., and Amaar Holding, Inc. (for convenience only, referred to in the Complaint as the "*Management Defendants*") respectfully submit this Reply Memorandum in further support of their Motion to Dismiss the Complaint, in whole or in part, based on the Statute of Limitations, which Motion was converted by the Court to a Motion for Summary Judgment by Order dated April 13, 2012.

## ARGUMENT

### I.      STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R.Civ.P. 56(c).

The party moving for summary judgment is initially responsible for demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The onus then shifts to the party resisting summary judgment to present evidence sufficient to satisfy every element of the claim.  *Id.*

The non-moving party is required to "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).   In that regard, the party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated assertions."  *Celotex Corp. v. Catrett*, 477 U.S. at 324. Mere speculation and conjecture is insufficient. *Harlan Assocs. v. Village of*

*Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). The resisting party must submit facts that are "material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicious." *Patrick v. New York City Transit* Authority, 2007 WL 2071555 at *10 (E.D.N.Y. July 16, 2007) quoting *Contemporary Mission Inc. v. U.S. Postal* Service, 648 F. 2d 97, 107 n. 14 (2d Cir. 1981). Simply put, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industries Co.*, 475 U.S. 574, 586 (1986) .

Where it is apparent that no rational finder of fact could find in favor of the non-moving party because the evidence to support its case is so slight, summary judgment should be granted. *Gallo v. Prudential Residential Servs. Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir. 1994), *cert. den.* 481 U.S. 1029, 107 S. Ct. 1955, 95 L.Ed.2d 527 (1987).

In the instant case, the moving Defendants are entitled to Summary Judgment on Plaintiffs' RICO claims insofar as they are time-barred. Further, even if the RICO claims were not time-barred, the RICO claims must fail. This is because, if all of the allegations in the Complaint are taken as true, the allegations against the "Nominal Owner Defendants", which form the basis of the fraud claims, affirmatively defeat the alleged RICO conspiracy as pled.

## II.    PLAINTIFFS' RICO CLAIMS ARE TIME BARRED

The statute of limitations for a civil RICO action has been established by the Supreme Court for more than a decade. "Civil RICO claims are subject to a four-year statute of limitations." *Rotella v. Wood,* 528 U.S. 549, 552 (2000); *see also Frankel v. Cole,* 313 Fed. Appx. 418 (2d Cir. 2009) *citing Agency Holding Corp. v. Malley—Duff & Assocs.,* 483 U.S. 143 (1987). The statute begins to run "when the plaintiff discovers-or should have reasonably discovered-the alleged injury." *World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.,* 328

Fed.Appx. 695, 697 (2d Cir. 2009); *see also Frankel,* 313 Fed. Appx. at 419-420 ("[t]he statute of limitations is triggered when plaintiffs discover or should have discovered their RICO injury, not when they discover or should have discovered the underlying pattern of racketeering activity, even if the pattern of racketeering activity includes fraud."). In addition, under the law of the Second Circuit, "*the RICO statute of limitations . . . runs even where the full extent of the RICO scheme is not discovered until a later date, so long as there were 'storm warnings' that should have prompted an inquiry.*" *World Wrestling Entertainment, Inc.,* 328 Fed.Appx. at 697 (2d Cir. 2009).

The Second Circuit has also adopted a "separate accrual rule" pursuant to which a "new claim accrues and the four-year limitation period begins anew each time a plaintiff discovers or should have discovered a new and independent injury." *In Re Merrill Lynch Ltd. P 'Ships Litig.,*154 F.3d 56, 59 (2d Cir. 1998). Under this rule, a plaintiff who is continuously injured by an underlying RICO violation may only recover for injuries discovered or discoverable within four years of the time the suit is brought. *Bingham v. Zolt,* 66 F.3d 553 (2d Cir. 1995); *National Group for Communications and Computers Ltd. v. Lucent Technologies Inc.,* 420 F. Supp. 2d 253 (S.D.N.Y. 2006). In the Second Circuit, injuries are not deemed new and independent when they derive from an alleged single, common unlawful scheme. *In Re Merrill Lynch,* 154 F.3d at 59-60; *Pharr v. Evergreen Gardens, Inc.,* 2004 WL 42262, at * 2 (S.D.N.Y. Jan. 7, 2004) (*rejecting* any argument that monthly invoices containing false charges resulted in "new and independent" injuries when paid.)

In the case at bar, Plaintiffs have been aware of the alleged claims since at least November of 2004, when Plaintiffs filed a verified answer to a complaint in a Queens County Civil Court action entitled, *Excel Imaging, P.C., Assignor of Robert Gaznell v. Liberty Mutual*

*Insurance Company*, (*True Copy Attached to Defendants' Moving Brief as Exhibit "A"*).  In that answer, Liberty Mutual asserted affirmative defenses based on fraudulent statements and/or fraudulent conduct and for submitting bills for work performed by an independent contractor. Clearly, Plaintiffs were aware of, and even pled, fraudulent conduct by Defendants and, therefore, cannot now assert that such conduct was undiscoverable.

In responding to Defendants' Motion which presented that document to this Court, Plaintiffs speciously attempt to distance themselves from the statements contained in and knowledge shown by that answer by stating, *inter alia*, that, while the Court may take judicial notice of the existence of documents filed in another court, it may not do so for the truth of the matter asserted.  *See Plaintiffs' Memorandum of Law @ p. 29 citing Rashed v. Astrue*, 2010 U.S. Dist. LEXIS 78148 (E.D.N.Y., 2010); *Anderson News, L.L.C. v. Am. Media, Inc.*, 732 F.Supp.2d 389 (S.D.N.Y., 2010); *Dweck Law Firm, L.L.P. v. Mann*, 340 F.Supp.2d 353 (S.D.N.Y., 2004).

Plaintiffs' argument in the foregoing regard is unavailing insofar as Defendants do not offer that document to this Court for the truth of the matter asserted.  Indeed, Defendants have contested and do contest this allegation!  Rather, Defendants cite to Liberty Mutual's answer in the *Gaznell* matter only to establish that those defenses were raised.

In opposing this Motion, Plaintiffs aver that they did not discover nor should they have discovered the alleged scheme because Defendants purportedly concealed that scheme by fraud. That contention, however, is flatly contradicted by the existence of the *Gaznell* answer, wherein Plaintiff(s) raised those very issues as affirmative defenses to payment of the claim(s) at issue therein.  The Court does not need to accept the defenses as true, but may properly observe that those defenses were raised, since courts routinely hold that they may consider "facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence."

*DeSilva v. North Shore-Long Island Jewish Heath System, Inc.*, 770 F.Supp.2d 497 (E.D.N.Y. 2011).

Obviously aware of the fact that this Court may properly take judicial notice of the fact that the affirmative defenses in the *Gaznell* answer were raised, even if the Court may not consider it for the truth of the matter asserted, Plaintiffs' Opposition brief states:

> Even a cursory reading of the … affirmative defense (sic.) in the civil court Answer reveal that they do not involve fraudulent incorporation, fee splitting, or independent contractor billing.

*See Plaintiffs Supplemental Memorandum in Opposition @ p. 12.*

Plaintiffs' contention in the foregoing regard is belied by the evidence.   More specifically, the Fifth Affirmative Defense in the Answer states that "the treatment … was performed by an independent contractor".   *See Exhibit "A" to Defendants' Moving Brief.*  The Court may note that this affirmative defense was not alleged "upon information and belief".   The Fourteenth Affirmative Defense states that Excel provided fraudulent statements and engaged in fraudulent conduct.   *Id.*   The Fifteenth Affirmative Defense states that Excel is not entitled to direct payment from an insurer.   *Id.*   Last, the Ninth Affirmative Defense states that Excel refused to provide responses to Plaintiffs' requests for additional verification.   *Id.*  Accordingly, it is not clear what 'cursory reading' Plaintiffs are suggesting.   Moreover, this Court may properly observe – without regard to the truth of the matter asserted – that Plaintiffs asserted the same claims alleged herein against Defendants more than seven (7) years before this case was filed.   Accordingly, as held by the Second Circuit in *World Wrestling Entertainment, Inc.*, Plaintiffs were – at the very least – aware of "storm warnings" that should have prompted an inquiry into the bases for the claims asserted herein. *Id.*, 328 Fed.Appx. at 697.

The applicable standard is an objective one and applies where a person would conclude, based on the totality of the circumstances, that further inquiry was necessary. *Koch v. Christie's Intl. PLC*, 785 F. Supp. 2d 105, 114 (S.D.N.Y. 2011). "Facts that should arouse suspicion, for example, are equated with actual knowledge of the claim." *Donahue v. Pendleton Woolen Mills, Inc.*, 633 F. Supp 1423, 1443 (S.D.N.Y. 1986). Civil RICO plaintiffs must be diligent, for the statute was "designed to encourage plaintiffs to take responsibility for their own injuries and 'encourage prompt civil litigation to supplement Government efforts to deter and penalize' the prohibited practices." *Koch v. Christie's Intl. PLC*, 785 F Supp. 2d at 115 (internal quotation marks in original) *quoting Rotella v. Wood*, 528 U.S. 549 (2000).

New York courts follow a similar "inquiry notice" rule, holding that "in order to start the limitations period regarding discovery, a plaintiff need only be aware of enough operative facts so that, with reasonable diligence, she could have discovered the fraud... [i]n other words, all that is necessary are sufficient facts to suggest to a person of ordinary intelligence the probability that they may have been defrauded." *Watts v. Exxon Corp.*, 188 A.D.2d 74, 76 (3d Dept. 1993); *Lucas-Plaza Hous. Dev. Corp. v. Corey*, 23 A.D.3d 217 (1st Dept. 2005).

In the case at bar, no reasonable jury could deny that Plaintiffs were aware of enough operative facts to have asserted affirmative defenses against Defendants alleging fraudulent incorporation and independent contractor billing as of no later than 2004, but ignored those facts or "storm warnings" for nearly seven years. Consequently, the Beadle Affidavit attesting to when Liberty Mutual purportedly discovered the conduct complained of herein is irrelevant and Defendants are entitled to summary judgment dismissing the claims as time-barred.

### III.   PLAINTIFFS' RICO CLAIMS FAIL AS A MATTER OF LAW

A RICO "conspiracy" is defined as an "agreement of two or more persons to join together to accomplish an offense which would be in violation of Section 1962(a), (b), and/or (c) . . . ." 3B, Fed. Jury Prac.& Instr. §161.23. "Section 1962(d)'s target, like that of all provisions prohibiting conspiracies, is the *agreement* to violate RICO's substantive provisions . . . ." *Goren v. New Vision Int,*156 F.3d 721, 731 (7th Cir. 1998) (emphasis in original).

To establish a RICO claim, a plaintiff must show "(1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley Inc.,* 719 F.2d 5, 17 (2d Cir., 1983).

In explaining this requirement, Judge Robert W. Sweet of the Southern District of New York said "RICO is a specialized statute requiring a particular configuration of elements. These elements cannot be incorporated loosely from a previous narration, but must be tightly particularized and connected in a complaint" *Lesavoy v. Lane,* 304 F.Supp.2d 520 (S.D.N.Y. 2004). Moreover, where, as here the predicate acts of a civil RICO claim are grounded in fraud, the concerns associated with pleading fraud with particularity take on an even greater importance than usual. *Id., citing De La Roche v. Calcagnini,* 1997 WL 292108 (S.D.N.Y. 1997).

Civil RICO actions must meet the routine pleading requirements of *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007), but "courts are particularly mindful of these standards in the context of a civil RICO claim, the assertion of which often has an almost inevitable stigmatizing effect on those named as defendants." *Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq.,* 758 F.Supp.2d 153, 166

(E.D.N.Y., 2010) (internal quotation and citation omitted).  As articulated by Judge Matsumoto

in *Curtis & Associates, P.C.,*

> "Because of this likely powerful effect on potentially innocent
> defendants who face the threat of treble damages, and the
> concomitant potential for abuse of RICO's potent provisions, the
> court is aware of a particular imperative in cases such as the one at
> bar, "to flush out frivolous [civil] RICO allegations at an early
> stage of the litigation."

*Id., as citing World Wrestling Entertainment, Inc.,* 530 F.Supp.2d 496.

Judge Matsumoto further found, citing to *Nichols v. Mahoney,* 608 F.Supp.2d 526, 536

(S.D.N.Y.2009) that "[a] civil RICO lawsuit has vast implications for the defendants because of

the specter of treble damages and the possibility of permanent reputational injury to defendants

from the allegation that they are racketeers."

### A.      Plaintiffs Do Not Allege a RICO Conspiracy

In the instant case, Plaintiffs have failed to plead the existence of a RICO conspiracy.

More specifically, Plaintiffs' Third Cause of Action alleges a conspiracy under 18 USC 1964(d)

among Dr. Freilich, Dr. Sami, Dr. Khan, Dr Qureshi, Dr. Imam and the "Management

Defendants" whereby said Defendants "knowingly … agreed, combined and conspired to

conduct and/or participate, directly or indirectly, in the conduct of the Excel Enterprise's affairs,

through a pattern of racketeering activity consisting of repeated violations of the federal mail

fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mail to submit thousands

of fraudulent bills to Liberty Mutual and other insurers." *Complaint @ ¶ 164.*

This "sweeping legal conclusion" cast in the form of a factual allegation does not suffice

to state a claim.  *See Crab House of Douglaston, Inc., supra.; Law Offices of Curtis v. Trinko v.

Bell Atlantic Corp.,* 294 F.3d 307, 333 (2d Cir.2002); 5A Charles Alan Wright & Arthur R.

Miller, *Federal Practice and Procedure § 1357* (2d ed.1990).  This is so, because, "[t]o state a

RICO claim under subsection (d), plaintiffs must establish that each defendant agreed *personally* to commit at least two predicate acts." *Volmar Distributors, Inc. v. New York Post Co., Inc.* 825 F.Supp. 1153, 1167 (S.D.N.Y. 1993); citing *United States v. Teitler*, 802 F.2d 606, 612–13 (2d Cir.1986); *U.S. v. Ruggiero,* 726 F.2d 913, 921 (2d Cir. 1984) (emphasis in original).

In this case, the specific allegations in the Complaint flatly contradict the legal conclusion of a conspiracy among Dr. Freilich, Dr. Sami, Dr. Khan, Dr Qureshi, Dr. Imam and the "Management Defendants", because the Complaint fails to allege which Defendants personally participated in the predicate acts.  Further, the Complaint makes specific allegations to establish that the conspiracy could not exist as it was generically pled.  For example, the Complaint alleges:

- Amanat and Ilahi did not consult with Dr. Freilich in any detail before making their decision to activate operations at Excel; (¶50)

- During his December 13, 2003, examination under oath, Dr. Freilich testified that … he was not in charge of anything at Excel; (¶54)

- True ownership and control over Excel has rested at all times entirely with the Management Defendants; (¶55)

- Throughout the course of Dr. Freilich's relationship with the Management Defendants, all decision-making authority relating to the operation and management of Excel was vested entirely with the Management Defendants … Dr. Freilich … was completely unaware of the most fundamental aspects of how Excel operated; (¶56)

- Amanat and Ilahi did not consult with Dr. Freilich in any detail before making the decision to transfer Dr. Freilich's nominal ownership interest in Excel to Dr. Sami and Dr. Khan; (¶66)

- Dr. Sami and Dr. Khan did not review the "management," "marketing," "lease," "billing," and/or "collections" agreements between Excel and the Management Defendants; (¶70)

- As was the case during Dr. Freilich's tenure as the paper owner of Excel, throughout the course of Dr. Sami's and Dr. Khan's relationship with the Management Defendants, all decision-making authority relating to the operation and management of Excel was vested entirely with the

Management Defendants. In addition, Dr. Sami and Dr. Khan neither controlled nor maintained any of Excel's bank accounts, books or records; did not select, direct, and/or control any of the individuals or entities that were responsible for handling any aspect of Excel's financial affairs; did not hire or supervise any of Excel's employees … and were completely unaware of the most fundamental aspects of how Excel operated; (¶75)

▪ Dr. Sami resided out of state with little or no connection to the professional corporation, while Dr. Khan did not practice medicine in any way through the professional corporation; (¶78)

▪ Prior to signing the share transfer agreement, Dr. Qureshi did not review the "management," "marketing," "lease," "billing," and/or "collections" agreements between Excel and the Management Defendants; (¶85)

▪ As was the case during Dr. Freilich's, Dr. Sami's and Dr. Khan's tenure as the paper owners of Excel, throughout the course of Dr. Qureshi's relationship with the Management Defendants, all decision-making authority relating to the operation and management of Excel continues to be vested entirely with the Management Defendants. In addition, Dr. Qureshi: neither controls nor maintains any of Excel's bank accounts, books or records; has not selected, directed, and/or controlled any of the individuals or entities that are responsible for handling any aspect of Excel's financial affairs; has not hired or supervised any of Excel's employees or independent contractors; and has been completely unaware of the most fundamental aspects of how Excel operates; (¶90)

▪ Prior to signing the share transfer agreement, Dr. Imam did not review the "management," "marketing," "lease," "billing," and/or "collections" agreements between Excel and the Management Defendants; (¶104)

▪ As was the case during Dr. Freilich's, Dr. Sami's, Dr. Khan's, and Dr. Qureshi's tenure as the paper owners of Excel, throughout the course of Dr. Imam's relationship with the Management Defendants, all decision-malting authority relating to the operation and management of Excel continues to be vested entirely with the Management Defendants. In addition, Dr. Imam: neither controls nor maintains any of Excel's bank accounts, books or records; has not selected, directed, and/or controlled any of the individuals or entities that are responsible for handling any aspect of Excel's financial affairs; has not hired or supervised any of Excel's employees or independent contractors; and has been completely unaware of the most fundamental aspects of how Excel operates; (¶109)

As can be seen above, the Complaint makes numerous allegations specifically claiming

that Dr. Freilich, Dr. Sami, Dr. Khan, Dr Qureshi, and Dr. Imam knew nothing about the

purported management, marketing, lease, billing, and/or collections agreements between Excel and the Management Defendants and, further, 'were completely unaware of the most fundamental aspects of how Excel operates". *See supra.* Consequently, the specific allegations of the lack of involvement by Dr. Freilich, Dr. Sami, Dr. Khan, Dr Qureshi, and Dr. Imam wholly defeats the generic, sweeping and conclusory allegation of a RICO conspiracy. *See Volmar Distributors, Inc.; See also Crab House of Douglaston, Inc.,* ("the general allegation of supervision is directly undercut by the more specific assertion that Halfmann was a trainee, crippling Plaintiffs' claims against Halfmann"); *Jones v. Nat'l Comm. & Surveillance Networks,* 2006 WL 73623, *9 (S.D.N.Y. 2006) ("the complaint is not saved by conclusory allegations that are inconsistent with the facts pled, or a common sense understanding of those facts."); *Lesavoy v. Lane,* 304 F.Supp.2d 520 (S.D.N.Y., 2004) ("Parroting statutory language while generally referring the reader back to the previous 100 paragraphs in a complaint is inadequate."); *Zaro Licensing, Inc. v. Cinmar, Inc.,* 779 F.Supp. 276, 284 (S.D.N.Y.,1991); *Gregoris Motors v. Nissan Motor Corp.,* 630 F.Supp. 902, 913 (E.D.N.Y.1986).

For all the foregoing reasons, Plaintiffs' conspiracy claim under 18 USC §1962(d) must be dismissed as a matter of law.

### B.   Plaintiffs Do Not Allege an Enterprise That is Distinct From The Pattern Of Racketeering Activity

It is well-settled that a RICO enterprise "must be an entity [that is] separate and apart from the pattern of activity in which it engages." *Crab House of Douglaston, Inc. v. Newsday, Inc.,* 418 F. Supp. 2d at 205. "[E]nterprise and pattern of racketeering activity remain conceptually distinct elements of a RICO violation, each of which must be <u>alleged in the complaint</u> in order to survive a Rule 12(b)(6) motion to dismiss." *U.S. v. Int'l Longshoremen's Ass'n,* 518 F. Supp. 2d 422, 273 (E.D.N.Y. 2007) (emphasis added). "The 'enterprise' is not the

'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all time remains a separate element which must be proved by the Government." *U.S. v. Turkette*, 452 U.S. 576, 583 (1981). "In assessing whether an alleged enterprise has an ascertainable structure distinct from that inherent in a pattern of racketeering, it is appropriate to consider whether the enterprise would still exist were the predicate acts removed from the equation." *Amsterdam Tobacco Inc. v. Philip Morris Inc.*, 107 F.Supp.2d 210, 215 (S.D.NY. 2000) (quotation omitted).

Plaintiffs' arguments, which attempt to escape the effect of this rule, demonstrate their failure to meet the distinctness standard. More specifically, the Complaint alleges that "Defendants have masterminded and implemented a massive fraudulent scheme through which they have, using Excel, billed Liberty Mutual over $1,200,000.00 in charges for radiology services that Excel never has been eligible to recover". *Complaint @ ¶39*. In sum, Plaintiffs allege that the Defendants formed an association-in-fact enterprise for the sole purpose of billing Plaintiffs for services that Defendants were ineligible to be paid for. These allegations are insufficient as a matter of law. The fatal flaw of this claim is that it lacks any allegations that "detail any course of fraudulent or illegal conduct separate and distinct from" the purported pattern of racketeering activity, or, "that the association-in-fact enterprise had any purpose other than the execution" of the scheme. *First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004).

"According to Second Circuit case law, the "person" who engages in the pattern of racketeering activity must be an entity distinct from the enterprise, at least where the entity is a corporation." *Crab House of Douglaston, Inc. v. Newsday, Inc.*, 418 F. Supp. 2d at 205 citing *Bennett v. United States Trust Co. of N.Y.*, 770 F.2d 308, 315 (2d Cir.1985). "In other words, an

enterprise must be an entity separate and apart from the pattern of activity in which it engages." *Id.* quoting *Turkette*, 452 U.S. at 583 (internal quotations omitted).

"In order to satisfy the "conduct" element, a "plaintiff must plead each Defendant's participation in the 'operation or management' of an enterprise." *Crab House of Douglaston, Inc. v. Newsday, Inc.*, 418 F. Supp. 2d 193, 206 (E.D.N.Y. 2006) citing *Lesavoy v. Lane*, 304 F.Supp.2d at 534.

This is particularly relevant where, as here, the alleged conspirators are part of a uniform corporate structure. "Subsidiaries and other affiliates of a parent corporation—alone or together with the parent corporation—do not constitute a RICO enterprise distinct from the parent corporation.". *Crab House of Douglaston, Inc. v. Newsday, Inc.*, 418 F. Supp. 2d at 205 quoting *Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 113 F.Supp.2d 345, 366 (E.D.N.Y.2000). "Based upon *Discon*, if the Corporate Defendants were part of a uniform corporate structure, then they would fail the "distinctiveness" requirement of *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, and its progeny. See 30 F.3d 339, 343–44 (2d Cir.1994) (holding that "the [RICO] person and the enterprise referred to must be distinct" *Id.*

Here, the alleged enterprise is merely a reiteration of the alleged racketeering activity and, accordingly, there would be no enterprise if the alleged activity were "removed from the equation." *See Amsterdam Tobacco Inc., supra.*

In the instant case, Plaintiffs have failed to show that the "enterprise [has] an existence beyond that which is merely to commit each of the acts charged as predicate racketeering offenses." *Id., citing Schmidt v. Fleet Bank,* 16 F.Supp.2d 340, 349 (S.D.N.Y.1998); *United States v. Riccobene,* 709 F.2d 214, 223-24 (3d Cir.1983). "In *Reves v. Ernst & Young,* the Supreme Court held that 'to conduct or participate, directly or indirectly, in the conduct of [an]

enterprise's affairs,' [as required by] § 1962(c), one must participate in the operation or management of the enterprise itself ... and at a minimum must play some part in directing the enterprise's affairs." *Id.* quoting Reves v. Ernst & Young, 507 U.S. 170, 184 (1993); *Redtail Leasing, Inc. v. Bellezza*, 1997 WL 603496, *5 (S.D.N.Y. 1997) ("A defendant does not 'direct' an enterprise's affairs under § 1962(c) merely by engaging in wrongful conduct that assists the enterprise").

Consequently, no civil RICO claim has been stated.

### C.   Plaintiffs Have Failed to Articulate a Claim for Mail Fraud

"A complaint alleging mail and wire fraud must show (1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." *S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.*, 84 F.3d 629 (2d Cir. 1996) citing *United States v. Gelb*, 700 F.2d 875 (2d Cir.), *cert. denied*, 464 U.S. 853 (1983); *Porcelli v. U.S.*, 404 F.3d 157 (2d Cir. 2005) ("the essential elements of a mail fraud violation include: (1) use of the mails to further (2) a scheme to defraud with (3) money or property as the object of the scheme"); *United States v. Gole*, 158 F.3d 166 (2d Cir.1998); *United States v. Dinome*, 86 F.3d 277, 283 (2d Cir.1996).

As to the second element, a scheme to defraud, Plaintiff must show, *inter alia*, the requisite scienter (or fraudulent intent) on the part of the defendant (*U.S. v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2005); *United States v. D'Amato*, 39 F.3d 1249 (2d Cir.1994)) as well as the materiality of the misrepresentation. *Neder v. United States*, 527 U.S. 1 (1999).

"While there is no requirement that the defendant personally mail a letter, the plaintiff must show 1) that the defendant 'caused' the mailing ... and 2) that the mailing was for the purpose of executing the scheme or ... 'incidental to an essential part of the scheme."

*McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992) (citations and quotations omitted). To successfully plead a mail fraud claim, "the circumstances constituting the alleged fraud must be pled with particularity." Fed.R.Civ.P. 9(b); *Allstate ins. Co. v. Bogoraz*, 2011 WL 2421045 at *4 (E.D.N.Y 2011); *Fresh Meadow Food Services, LLC v. RB 175 Corp.*, 282 Fed.Appx. 94, 97 (2d Cir.2008).   Plaintiffs must specify the time, place, speaker and content of the alleged misrepresentations. *Zigman v. Giacobbe*, 944 F.Supp 147, 153 (E.D.N.Y. 1996).

In the instant case, Plaintiffs' Second Cause of action for mail fraud must fail because Plaintiffs have failed to plead, let alone establish the requisite scienter.

For the foregoing reasons, Plaintiffs' mail fraud claim must be dismissed.

**CONCLUSION**

For the foregoing reasons, Defendants Excel Imaging, P.C., Faisal Abdus Sami, MD., Tariq R. Khan, MD., Pervez lqbal Qureshi, MD., a/k/a Pervaiz Qureshi, MD., Naiyer Imam, MD., Afzal M. Amanat, Mohammed Shafkat Ilahi, Claimnet and Amaar Holding Inc. respectfully requests that this Court dismiss all RICO claims against them as barred by the applicable statute of limitations and/or by reason of Plaintiffs' failure to have stated a claim, together with such other and further relief as the Court deems just and equitable.

Dated: Garden City, New York
       June 8, 2012

> **DAVIDOFF HUTCHER & CITRON LLP**
> **f/k/a Davidoff Malito & Hutcher LLP**
> *Attorneys for the "Non-Freilich" Defendants*
>
> By: _____/s/_____
>      Andrew Paul Cooper, Esq.
>      200 Garden City Plaza, Suite 315
>      Garden City, New York 11530
>      (516) 248-6400